IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SALLY C.,[1]                                              No. 6:19-cv-1263-MO

              Plaintiff,                          OPINION & ORDER

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.


MOSMAN, District Judge:

       This matter comes before me on Plaintiff Sally C.'s Complaint [ECF 1] against

Defendant Commissioner of the Social Security Administration. For the reasons given below, I

REVERSE the Commissioner's decision and REMAND this case for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

## PROCEDURAL BACKGROUND

On March 7, 2016, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and VI of the Social Security Act, with an amended alleged onset date of January 1, 2017 and a date last insured of December 31, 2021. Tr. 13, 15, 182-93. The Social Security Administration ("SSA") denied her claim initially and upon reconsideration. Tr. 109-27. Plaintiff appeared and testified at a hearing held on April 5, 2018, before Administrative Law Judge (ALJ) Elizabeth Watson. Tr. 27-48. On July 9, 2018, the ALJ issued a decision finding that Plaintiff had not been under a disability at any time from the alleged onset date through the date of the decision. Tr. 10-26. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2017, the amended alleged onset date. Tr. 15. At step two, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia; and bipolar disorder with anxious distress. Tr. 16. At step three, the ALJ found no impairment that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 16. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she is limited to understanding and carrying out simple instructions. She is limited to no more than occasional interaction with the general public. She requires a workplace environment with few changes.

Tr. 19-20.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 20. At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform such as cleaner (II), hand

packager, and laundry worker (II). Tr. 21-22. The ALJ therefore found Plaintiff not disabled. Tr. 22.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises six issues with the ALJ's decision. She argues the ALJ erred by (1) improperly rejecting the opinions of examining psychologist, Pamela Roman, PhD, and state agency psychologists Winifred C. Ju, PhD and Irmgard E. Friedburg, PhD; (2) failing to perform an adequate analysis at step three; (3) improperly rejecting lay witness testimony; (4) erroneously discounting Plaintiff's symptom testimony; (5) failing to adequately develop the record; and (6) failing to meet her burden at step five. I address these issues in turn.

## I.    Medical Opinion Evidence

An ALJ must consider, evaluate, and explain the weight he gave the opinions of medical professionals who saw the claimant or reviewed her records in a professional capacity. 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 416.927(b), (d) & (e); SSR 6-03p, available at 2006 WL 2329939. For claims like this one filed before March 17, 2017, the Ninth Circuit distinguishes between the

opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

To reject an examining doctor's opinion, the ALJ must present "specific, legitimate reasons." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). If there is a conflict between medical opinions, the ALJ must provide a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation of the evidence, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Id.* at 1040. The opinion of a non-examining physician cannot by itself constitute substantial evidence to reject the opinion of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830-1 (9th Cir. 1995).

*A. Pamela Roman, PhD*

On February 16, 2017, psychologist Pamela Roman completed a psychological evaluation of Plaintiff. Tr. 502-11. Dr. Roman diagnosed her with bipolar II disorder, depression and anxiety. Tr. 505-06. Dr. Roman made the following specific findings: (1) interpersonally, Plaintiff feels nervous and inadequate around others (Tr. 506); (2) she would not be expected to maintain attention and concentration throughout a normal work day without being unreliable and decompensating (Tr. 507); and (3) she has marked limitations in responding appropriately to usual work situations and to changes in a routine work setting. Tr. 509.

The ALJ gave Dr. Roman's opinions "limited weight." Tr. 20. The ALJ specifically disregarded Dr. Roman's opinions that Plaintiff would have moderate limitations in interacting

with the public, supervisors, and coworkers, and marked limitations in responding appropriately

to usual work situations and changes in a routine work setting. Tr. 20. The ALJ rejected these

opinions as "not consistent with the record as a whole." Tr. 20. As proof, she noted that Dr.

Roman relied on "periods of mania" as being problematic for irritability and impulsiveness, but

that the relevant treatment record showed overt hypomanic or manic behavior only once. Tr. 20,

440-50.

The ALJ failed to support her rejection of Dr. Roman's opinion with substantial

evidence. As noted above, to reject an examining physician's opinion because it conflicts with

the record, the ALJ must give a detailed and thorough summary of the facts and conflicting

clinical evidence, stating her interpretation of the evidence, and making findings. *Tommasetti*,

533 F.3d at 1041. Contrary to the ALJ's suggestion that Plaintiff only suffered the symptoms

underlying Dr. Roman's opinion once, the record shows Plaintiff suffered these symptoms

repeatedly. For example, at an August 3, 2017 visit she described an unstable mood, an increase

in bipolar symptoms, and "more irritability. panic attacks, avoidance and nervousness" from her

anxiety disorder. Tr. 445-46. Likewise, on November 28, 2017, Plaintiff presented with

increasing bipolar symptoms, irritability and low mood, slowed thinking, guilt, fixating, and self-

blame, along with anxious mood. Tr. 432-33. The ALJ fails to acknowledge these records, or

persuasively give a "detailed and thorough summary of the facts" that would otherwise

undermine Dr. Roman's opinion. Instead, the ALJ arbitrarily substituted her own opinion for that

of Plaintiff's examining physician, which was error. *Day v. Weinberger*, 522 F.2d 1154, 1156

(9th Cir. 1975). Because the ALJ failed to provide a sufficient summary of the facts or

conflicting clinical evidence, she erred by discounting Dr. Roman's opinion.

Defendant also tries to bolster the ALJ's conclusion with the improper argument that Dr. Roman's fibromyalgia limitations conflicted with her own examination notes. Def. Br., ECF No 15 at 7-9. Even if this were a compelling reason, the Court considers only those reasons relied upon by the ALJ, not Defendant's *post hoc* rationalizations. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (stating the court "is constrained to review the reasons the ALJ asserts"). Because that rationale was not part of the ALJ's analysis, the Court will not consider whether it would be a sufficiently specific, legitimate reason to reject Dr. Roman's opinion.

*B. Winifred C. Ju, PhD, and Irmgard E. Friedburg, PhD*

On June 13, 2016, psychologist Dr. Winifred C. Ju, evaluated Plaintiff, and concluded she was limited to one- to two-step tasks due to limitations in concentration, persistence, and pace from symptoms of bipolar II disorder and anxiety disorder. Tr. 60, 72. On August 18, 2016, Dr. Irmgard E. Friedburg, agreed with Dr. Ju's findings. Tr. 89, 102. The ALJ rejected these opinions, giving them "some weight" in providing limitations on skill, interactions with others, and changes in the work setting, but rejecting the limitation to on-to two-step tasks as "rather vague." Tr. 20.

These opinions were not vague, and the ALJ erred by relying on this as a basis to reject them. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). There is nothing vague, however, about a medical opinion that limits a claimant to one- and step-two tasks; this is common parlance of state medical examiners that fill out disability determination explanations for social security claimants. *See* Tr. 60, 72. This limitation is so common, in fact, that the Ninth Circuit has considered it many times, and evaluated how this limitation fits into the Dictionary of Occupational Titles' GED Reasoning

Levels. *See Rounds v. Comm'r Soc. Sec. Admin.,* 807 F.3d 996, 1002 (9th Cir. 2015). Doctors Ju

and Friedburg also clarified their conclusions by reference to multiple specific medical records,

which the ALJ does not address. *See* Tr. 60, 72. Since Doctors Ju and Friedburg gave a concrete,

tangible work restriction based on record evidence and the ALJ failed to cite substantial evidence

to overturn those opinions, other than stating they were "rather vague," it was error for the ALJ

to discount these opinions.

## II. Fibromyalgia at Step Three

Plaintiff also argues this case must be remanded because the ALJ did not properly

consider her fibromyalgia as required by Social Security Ruling 12–2p ("SSR 12–2p") at step

three. Pl.'s Br. at 9–10 (citing SSR 12–2p, *available at* 2012 WL 3104869 (July 25, 2012)). At

step three, the ALJ determines whether a claimant's impairment or combination of impairments

meets or equals the criteria for a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Where an impairment does so, it is per se disabling and the ALJ has no discretion in awarding

benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir.

1990). However, a fibromyalgia diagnosis itself cannot meet the listing requirements because

fibromyalgia is not a listed impairment. *Britton v. Colvin*, 787 F. 3d 1011, 1012 (9th Cir. 2015);

SSR 12–2p at *6 ("[Fibromyalgia] cannot meet a listing in appendix 1 because [fibromyalgia] is

not a listed impairment."). In other words, the analysis of a claimant's fibromyalgia symptoms at

step three focuses on whether a claimant's fibromyalgia symptoms medically equals a listing. *Id.*

To demonstrate that an impairment medically equals a listing, the claimant must show the

impairment meets all of the medical criteria in that listing. *Sullivan v. Zebley*, 493 U.S. 521, 530

(1990). "An impairment that manifests only some of those criteria, no matter how severely, does

not qualify." *Id.* "[To] equal a listed impairment, a claimant must establish symptoms, signs and

laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1526(a)). Unless a claimant presents evidence in an effort to establish equivalence, an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

SSR 12–2p establishes guidelines for evaluating fibromyalgia in disability claims. As the ruling explains, the inquiry at step three remains examining whether the effects of the claimant's fibromyalgia, either individually or in combination with a claimant's other impairments, "medically equals a listing." SSR 12–2p available at 2012 WL 3104869, at *6. Here, the ALJ found Plaintiff's fibromyalgia severe at step two, but found it did not singly or in combination with other limitations equal a listing at step three; this is all that SSR12-2p requires. See SSR 12–2p; *see, e.g., Wells v. Colvin*, 2016 WL 1070665, at *6 (N.D. Cal. Mar. 18, 2016) (finding no error when the ALJ did not mention SSR 12–2p at step three because it had no bearing on the ALJ's step three determination). Moreover, Plaintiff does not specify which listings she believes she meets; nor does she direct the Court to any evidence which would support the diagnosis and findings of a listed impairment. *Burch*, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."). The ALJ therefore did not err by failing to specially consider Plaintiff's diagnosed fibromyalgia at step three.[2]

### III. Subjective Symptom Testimony

---

[2] After the ALJ further develops the record on remand, if there are medical records relevant to whether Plaintiff's fibromyalgia equals a listing at step three, the ALJ must consider them in accordance with SSR 12-2p.

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 114, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.*

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing, Plaintiff testified about: the inability to continue her last job as a janitor in 2017 due to high levels of anxiety, panic, and forgetfulness, resulting in repeating the same task multiple times, which slowed down the work crew (Tr. 32); needing to leave work early to go home (Tr. 32); physical limitations preventing her from continuing to work (Tr. 32-33); failing to complete her tasks in the allotted timeframe, resulting in slowing others down and causing her to get anxious or nervous (Tr. 33); difficulty interacting with others while working (Tr. 33);

difficulty working due to physical limitations, fatigue, and pain (Tr. 33); mental limitations and memory deficits interfering with her ability to work, forgetting job tasks, and the inability to function adequately to get through the workday, resulting in being told to go home early (Tr. 33); lifting more than 20 pounds just once or twice per week while working and requiring assistance with lifting (Tr. 34-35); frequent doctor's visits for her physical and mental health, interfering with her ability to work (Tr. 35); hit and miss effectiveness of medications, with severe side effects at times (Tr. 36); lack of social interactions (Tr. 36); concentration deficits and forgetting where she is and what she is supposed to do, resulting in panic and leaving her work station (Tr. 37); the need to leave work early two to three times per week during her last year of employment (Tr. 37); medication side effects of bowel issues, appetite suppression, shaking, and the inability to drive (Tr. 37-38); horrible fibromyalgia pain in her arms and legs, as well as migraine headaches (Tr. 38); feeling exhausted after walking for 20 minutes (Tr. 38); the need to sit down after standing for about half an hour (Tr. 38); lack of shopping (Tr. 38); the need for assistance with household chores from family members because she is unable to consistently cook and clean due to pain and headaches (Tr. 39); four headaches per week, resulting in the need to go the emergency room at times (Tr. 39); impatience and irritability, particularly in public, preventing her from dealing with a lot of things (Tr. 39); needing to leave the store early half the time and wait in the car for her husband to finish shopping (Tr. 40); insomnia, resulting in struggles going to sleep and negative effects the following day (Tr. 40); and taking tranquilizers for stress (Tr. 40).

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 18 However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and

limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 18. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with the objective medical evidence, that Plaintiff's conditions improved with treatment, and that Plaintiff's daily activities conflicted with her symptom testimony. Tr. 18.

*A. Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)(emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). The absence of corroborating objective medical evidence is not enough, on its own, however, to reject a claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 16-3p, 2017 WL 5180304, at *5; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ reasonably relied on the absence of corroborating medical records to discount Plaintiff's subjective symptom testimony about her fibromyalgia pain. Because symptoms like pain are not quantifiable, Social Security regulations forbid ALJs to reject symptom testimony because there is a lack of objective medical evidence to corroborate it.  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Concerning Plaintiff's physical symptoms, and specifically her allegations of debilitating fibromyalgia pain, the ALJ relied on the lack of supportive medical evidence to conclude that Plaintiff had overstated the extent of her physical pain. Tr. 18-19. The

ALJ specifically noted that "the current record did not include a full workup [of fibromyalgia] with exclusion of other impairments," and that Plaintiff had not "report[ed] flares of fibromyalgia since prior to the amended alleged onset date," when concluding Plaintiff's pain could not be as bad as she alleged at the hearing. Tr. 19. Nor does Plaintiff identify any record evidence of fibromyalgia pain the ALJ missed. *See* Pl. Br., Pl. Reply, ECF Nos. 13, 16. As the regulations and Ninth Circuit precedent make clear, this is not, by itself, a sufficient basis to reject Plaintiff's testimony; but it is a relevant consideration when the ALJ is weighing the veracity of a claimant's statements about her pain. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 16-3p, 2017 WL 5180304. The Court therefore finds the ALJ did not err by considering the lack of medical evidence because she considered that data point in tandem with other clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's testimony about her physical limitations.[3]

B. *Work History*

The ALJ may also consider inconsistencies between a Plaintiff's symptom testimony and her work history. Even where a claimant shows the ability to work was limited by an impairment, some ability to work may be grounds to reject claims of complete disability. *Molina*, 674 F.3d at 1113 (citation omitted). When a claimant's work history contradicts her testimony regarding physical limitations, it is a "non-arbitrary ground on which the ALJ could discredit her testimony." *Camarena v. Kijakazi*, 2021 WL 5905720, at *1 (9th Cir. Dec. 14, 2021). An ALJ can consider "any work activity, including part-time work, in determining whether a claimant is disabled." *Ford*, 950 F.3d at 1156.

---

[3] After further developing the record on remand, if the ALJ finds medical records that substantiate Plaintiff's physical pain testimony, she must reconsider whether this is a sufficient basis to discount Plaintiff's testimony.

Although Plaintiff's work history did not rise to the level of gainful employment, the ALJ reasonably considered that her limited ability to work after the alleged onset date conflicted with her testimony about physical limitations. The ALJ specifically noted that Plaintiff worked "about 25 hours a week on her feet" in March, 2017 – three months after the alleged onset date. Tr. 18 (citing Tr. 521-523). The ALJ also relied on Plaintiff's statement from November 2017, when she stated "she has not been able to work with her husband because he has not had the amount of work needed for her to help" rather than being unable to work due to her conditions. Tr. 430-34. Taken together, these statements cast doubt on Plaintiff's testimony that she was physically unable to work during the relevant period. This was a clear and convincing reason, supported by substantial evidence for the ALJ to rely upon when discounting Plaintiff's testimony about her physical limitations.

### C. Improvement with Treatment

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Additionally, an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ also reasonably concluded that Plaintiff's mental health symptoms improved with treatment, which undermined her hearing testimony. Although Plaintiff complained that her

insomnia, depression, and anxiety left her unable to work (Tr. 38-40), the ALJ noted that Plaintiff treated these symptoms effectively with medications and regular treatment. Tr. 19. Specifically, the ALJ cited records of Plaintiff doing particularly well once she changed to lithium in mid-2017 and with staying on medications rather than stopping without guidance by a treating source. Tr. 430-50. Plaintiff also often reported sleeping well versus having chronic insomnia per testimony. Tr. 430, 444, 446, 451, 459, 463. While Plaintiff argues that the record did not show any sustained improvement, she does not point to any objective medical evidence that shows her symptoms deteriorated, except for her own testimony. *See* Pl. Reply, ECF No. 16 at 4. The ALJ even noted that, although Plaintiff's mental health symptoms waxed and waned, "when symptoms worsened, she was able to seek and receive additional treatment leading to improvements." Tr. 19. This is another clear and convincing reason, supported by substantial evidence to discount Plaintiff's symptom testimony.

## D. Daily Activities

The ALJ also reasonably discounted a narrow aspect of Plaintiff's subjective symptom testimony about her ability to interact with the public because it was inconsistent with her reported daily activities suggesting otherwise. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a

claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ identified several of Plaintiff's daily activities that conflicted with her testimony about difficulty interacting with the public. Despite testifying at the hearing that she had little social interaction and had difficulty interacting with others, Plaintiff was able to complete grocery shopping and attend religious functions, and made plans for social activities outside the home such as camping. Tr. 450-54. The ALJ further noted that Plaintiff was able to continue working in a limited capacity during the period at issue despite her mental health symptoms. Tr. 281-411, 430-99. Ultimately, even when activities do not show transferable work skills, they "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). The ALJ reasonably contrasted Plaintiff's ability to work and do tasks outside the home with her testimony about difficulty interacting with the public. This was another clear and convincing reason for the ALJ to discount this discrete aspect of Plaintiff's symptom testimony.

Plaintiff warns that the Ninth Circuit has emphasized that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony [] [], because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Plaintiff argues the ALJ was not sufficiently cautious in this case, and erred by failing to identify any actual inconsistencies between disabling symptoms and testimony about daily activities. Pl. Reply, ECF No 16 at 10-11. But as indicated above, the ALJ made a reasonable inference that certain of Plaintiff's daily activities conflicted with one small aspect of her symptom testimony. This Court will not dive in to re-weigh the evidence, which is

beyond its scope of review. *Ahearn*, 988 F.3d at 1115 ("We may not reweigh the evidence or substitute our judgment for that of the ALJ"). Ultimately, the ALJ gave a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony about her inability to interact with the public, and the Court will not disturb that finding.

### IV. Lay Witness Testimony

In determining whether a claimant is disabled, an ALJ must consider "lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that cannot be rejected without comment, and requires germane reasons, explained individually or in the aggregate. *Id*. Here, the ALJ discounted Plaintiff's husband's third-party statement that Plaintiff's fibromyalgia and bipolar affected her energy and confidence in performing work. Tr. 18, 234-41. The ALJ found the lay testimony "does not identify limitations suggestive of an inability to sustain work within the residual functional capacity." Tr. 19. The ALJ's opinion focused on several of the more positive aspects of the lay witness testimony—describing Plaintiff's ability to operate independently, do household tasks, and walk for at least a mile at a time—but did not offer any germane reasons for failing to accept the more dour aspects of Plaintiff's husband's testimony. For example, he testified about Plaintiff's mental health problems, difficulty handling stress, and physical limitations. *See* Tr. 234, 238, 240. The ALJ did not offer any reason, let alone a germane one, for failing to consider this testimony, which was error. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

Although the ALJ did not sufficiently analyze the lay witness testimony, any error in failing to do so was harmless. Plaintiff's husband described symptoms that mirrored Plaintiff's

own allegations. *Compare* Tr. 34-40, *with* 234-40. As discussed above, the ALJ provided legally sufficient reasons for concluding that Plaintiff's testimony was unpersuasive. These reasons apply with equal force to the lay witness testimony. Any error in rejecting the lay witness testimony was therefore harmless. *Molina,* 674 F.3d at 1117.

### V. Obligation to Develop the Record

Plaintiff also argues the ALJ erred by failing to subpoena certain medical records. As a general matter, the ALJ has a duty to develop the record, but Plaintiff retains the burden to prove that she is disabled and must inform the agency about or submit all evidence known to her that relates to the alleged disability. *Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 689 (9th Cir. 2009); 20 C.F.R. § 404.1512(d). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). This principle does not, however, allow a claimant to shift his own burden of proving disability to the ALJ. *Id*. at 459. At the hearing, Plaintiff's counsel noted that he requested medical records from Plaintiff's primary care provider during the relevant period, and followed up "at least 16 different times." Tr. 29. The record shows that Plaintiff's representative made numerous unsuccessful attempts to obtain these medical records, and that Plaintiff asked the ALJ and the Appeals Council directly to assist in obtaining the records. *See* Tr. 277, 279.

The ALJ erred by denying Plaintiff's request for help in obtaining the relevant medical records she needed to present evidence of her disability. An ALJ's duty to develop the record can demand that the ALJ subpoena physicians or order additional testing. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Plaintiff requested the ALJ's help subpoenaing records, but the ALJ failed to act, or give a compelling or legitimate reason for rejecting Plaintiff's request. *See*

Tr. 279. Especially when an ALJ's conclusion of nondisability relies on a lack of medical evidence—as the ALJ's decision to discount Plaintiff's subjective symptom testimony and fibromylagia diagnosis did here—failure to subpoena relevant records is error. *See, e.g., Gartner v. Berryhill*, 2017 WL 3208351, at *12 (D. Or. July 28, 2017) (finding a breach of the duty to develop the record where the ALJ declined the claimant's request for an examination to supplement an incomplete record). Because this other evidence contains medical testimony potentially favorable to Plaintiff and records that may help resolve inconsistencies, the Court cannot find that the ALJ's failure to examine this evidence was harmless. *See Lamear*, 865 F.3d at 1206-07.

## VI. Remand[4]

When a court determines the Commissioner erred in denying benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or the immediate payment of benefits, the Ninth Circuit employs the following "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. If all three requisites are met, the court may remand for benefits. *Id.* However,

---

[4] Plaintiff also argues the ALJ erred by providing the VE with insufficient hypotheticals at step five. *See* Pl. Br., ECF No. 13 at 19-20. Because the Court is remanding this case for the ALJ to reconsider medical opinions and to further develop the record, the ALJ will need to formulate a new RFC and conduct a new step five analysis. For that reason, Plaintiff's claim of error at step five is moot and need not be considered at this time.

even if all of the requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Id.* at 1021.

Here, the first requisite is met because the ALJ erroneously rejected medical opinions and failed to adequately develop the record. Since the record is incomplete, however, further proceedings would be useful to obtain relevant medical records, evaluate them, and properly consider the medical opinions of Doctors Roman, Ju, and Friedburg. Therefore, this case is reversed and remanded for further proceedings so that the ALJ can adequately develop the record, re-evaluate the opinions of Doctors Roman, Ju, and Friedburg, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

For the reasons given above, I REVERSE the Commissioner's decision and REMAND this case for further proceedings.

IT IS SO ORDERED.

DATED:    10/19/2023                .


*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge